UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CHRISTINE KENNEDY,

                Plaintiff,

         - against -

BETHPAGE UNION FREE SCHOOL
DISTRICT,

                Defendant.
------------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-72 (PKC) (ARL)

PAMELA K. CHEN, United States District Judge:

      Plaintiff Christine Kennedy sues Defendant Bethpage Union Free School District ("Defendant" or "the District") under 42 U.S.C. § 1983 for alleged First and Fourteenth Amendment violations. Defendant moves to dismiss this action in its entirety. For the reasons set forth below, the motion to dismiss is granted. However, in the interest of justice and out of an abundance of caution, the Court *sua sponte* grants Plaintiff leave to replead her claims.

**BACKGROUND**

**I.    Factual Background**

      Plaintiff alleges the following facts, which the Court accepts as true at this stage of the proceedings and construes in the light most favorable to Plaintiff. *See Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 429 (2d Cir. 2012).

      Plaintiff, a social worker trained in crisis intervention and group counseling, was employed by the District for nearly 15 years[1] as the only social worker for its high school. (Amended Complaint ("Am. Compl."), Dkt. 21, ¶¶ 8–9, 15, 40–42.) In addition to providing crisis

---

[1] The Complaint does not indicate specifically when Plaintiff began working for the District.

intervention and counseling to students, Plaintiff acted as a liaison between the District and other agencies, such as Child Protective Services. (*Id.* ¶ 13.) Plaintiff also was involved in several student groups and activities. For example, in 2014, Plaintiff started a mentoring program, Peers as Leaders ("PAL"), to help incoming freshmen receive guidance and mentorship from upperclassmen. (*Id.* ¶ 17.) After starting the program, Plaintiff continued to serve as an advisor to the group. (*Id.*) Plaintiff also was an advisor to the student club Students Against Destructive Decisions ("SADD"), for which she received an annual stipend from the District of approximately $3,800. (*Id.* ¶¶ 10–11.) Throughout her nearly 15-year tenure at the high school, Plaintiff was "consistently rated as highly effective." (*Id.* ¶ 42.)

During the 2017–18 school year, the District experienced a sharp increase in students needing assistance with psychological and mental health issues, as well as students requiring urgent crisis intervention and suicide assessment and prevention efforts. (*Id.* ¶ 18.) Plaintiff repeatedly voiced concern about this rise in mental health incidents to her superiors at Bethpage High School—including Director of Guidance Thomas Kenny (*i.e.*, Plaintiff's direct supervisor), Principal Michael Spence, and Assistant Principals Kevin Healy and Ralph Tocco. (*Id.* ¶¶ 3–4, 19–23, 43.) Plaintiff also repeatedly asked for additional support, including new protocols and more staff, to help handle the rise in cases. (*Id.* ¶¶ 23, 25, 43.) Whenever Plaintiff raised these issues, however, her superiors provided "wildly unhelpful, meaningless non-answers" and "appeared to want to sweep Plaintiff's concerns under the table." (*Id.* ¶¶ 26, 44.) At some point, Kenny informed Plaintiff that she was not going to be receiving any additional support at the high school. (*Id.* ¶ 28.) Around this time, Plaintiff also made efforts to raise public awareness about mental health issues—including speaking with teachers and parents about ways to help students, attending monthly meetings with other social workers where she shared concerns about the District

not addressing students' mental health needs, raising her concerns in various committee meetings, and speaking about the student mental health crisis in the District at the Stop the Violence conference at Hofstra University in December 2017 and December 2018, which Assistant Principal Healy also attended.  (*See id.* ¶¶ 76, 95.)

In April 2018, District Superintendent David Schneider "sent an email to staff" about preparing a 90-minute presentation, which would partly focus on mental health issues and crisis intervention, for the Superintendent's Conference Day in June 2018.  (*Id.* ¶¶ 29–30, 38.)  At a meeting with District social workers and psychologists,[2] Superintendent Schneider conveyed that it "was not a big deal" if Plaintiff and others could not assist with the presentation, because there was "an outside presenter" ready to step in.  (*Id.* ¶ 31, 33.)  Plaintiff left this meeting early to deal with a student crisis in the building.  (*Id.* ¶ 32.)

Following the meeting, Plaintiff informed Kenny, her direct supervisor, that she did not think she could participate in the optional presentation because of her increased workload.  (*Id.* ¶ 34.)  Thereafter, on May 18, 2018, Superintendent Schneider asked Plaintiff to prepare part of the optional presentation.  (*Id.* ¶ 45.)  Plaintiff respectfully declined "due to her increased job responsibilities," and Superintendent Schneider responded that this was "not a problem."  (*See id.* ¶¶ 37, 46–47.)  Nevertheless, on the same day, Principal Spence haled Plaintiff into his office and repeatedly told Plaintiff that it did not "look good for him" that Plaintiff had declined to participate in the optional presentation.  (*Id.* ¶ 48.)  Principal Spence also informed Plaintiff that failing to participate in the presentation "could correlate with a lack of support staff for the next school year." (*Id.* ¶ 49.)  Plaintiff was the only social worker in the District to decline to assist with the presentation.  (*Id.* ¶ 50.)

---

[2] The Complaint does not specify when this meeting occurred.

Three days after declining to participate in the optional presentation, Plaintiff "received an unannounced crisis observation" by Kenny. (*Id.* ¶ 51.) Plaintiff performed exemplarily. (*Id.* ¶ 52.) Several weeks later, on June 14, 2018, Kenny unexpectedly "walked into Plaintiff's office, shut the door, and informed" Plaintiff that she was being reassigned to the District's elementary school for the 2018–19 school year. (*Id.* ¶ 53.) Kenny told Plaintiff that she should contact Assistant Superintendent Caroline Lavelle with any questions. (*Id.*) Plaintiff believes this was the first time during her tenure that a social worker had been reassigned. (*Id.* ¶ 55.)

Thereafter, Plaintiff was not permitted to continue her involvement with the PAL program and was stripped of her role as advisor to the SADD club, including the $3,800 stipend that went along with it. (*Id.* ¶¶ 62–65, 78.) Additionally, in June 2019, Plaintiff created a website for District social workers, but after taking "weeks" to publish the website, Kenny refused to present or link it with other department websites and did not list Plaintiff's name on the guidance website as a social worker. (*Id.* ¶¶ 69, 72.) Plaintiff also "was purposefully not included or invited" to a Committee on Special Education meeting. (*Id.* ¶ 71.) Finally, in the fall of 2019, "Plaintiff discovered that by District fiat she was banned from participating and presenting on any topic at any PTA meeting without prior approval from the District and the PTA about her topic." (*Id.* ¶ 73.) According to Plaintiff, "no other social worker or employee of the District" has ever been required to obtain District approval before speaking or presenting at a PTA meeting. (*Id.* ¶ 75.)

## II.    Procedural History

On September 20, 2019, Plaintiff commenced this action in state court against the District, Kenny, Principal Spence, Assistant Superintendent Lavelle, former-Superintendent Terrence Clark, and Superintendent Schneider. (*See* Notice of Removal, Dkt. 1, ¶ 1.) On January 3, 2020, Plaintiff served the District and individual defendants with a Summons with Notice alleging, among other things, violations of the United States Constitution under 42 U.S.C. §§ 1981 and

4

1983.  (*Id.* ¶¶ 2–3; *see also* Summons with Notice, Dkt. 1-1.)  The District and individual defendants removed the case to this Court.  (*See generally* Notice of Removal, Dkt. 1.)

On February 18, 2020, Plaintiff filed a complaint (Dkt. 8),[3] to which the District and individual defendants responded on April 23, 2020, by requesting a pre-motion conference in anticipation of a motion to dismiss (Dkt. 11).  The Court held a pre-motion conference on June 23, 2020, and granted Plaintiff leave to file an amended complaint, with the defendants to file their motion to dismiss thereafter.  (*See* 6/23/2020 Minute Entry.)  Plaintiff filed the Amended Complaint on August 31, 2020 (Dkt. 21), and the defendants served Plaintiff with their motion to dismiss on October 2, 2020 (Dkt. 24).

On December 28, 2020, while the motion to dismiss was being briefed, the parties stipulated to—and the Court so ordered—the dismissal of all claims against the individual defendants with prejudice, thus leaving only the District as a defendant in the case.  (*See* Stipulation of Dismissal, Dkt. 28; 12/28/2020 Docket Order.)  Briefing of the motion to dismiss finished on January 4, 2021.  (*See* Dkts. 29–31.)

Plaintiff's operative complaint asserts three substantive claims.  First, it asserts that the District violated the First Amendment by retaliating against Plaintiff—namely, by demoting and reassigning her to the elementary school and removing her from the PAL program and SADD club—after she advocated for additional staff to handle the increasing number of students with mental health issues and respectfully declined to assist with an optional presentation due to her increased workload.[4]  (Am. Compl., Dkt. 21, ¶¶ 80–86.)  Second, the Amended Complaint alleges

---

[3] Plaintiff commenced this case in state court by filing a Summons with Notice, without filing a complaint.  (*See* Notice of Removal, Dkt. 1, ¶ 1.)

[4] Although the Amended Complaint does not specify that Plaintiff's retaliation claim is one under the First Amendment, the parties do not dispute that it is a First Amendment retaliation claim.  (*See generally* Defendant's Memorandum of Law in Support of Motion to Dismiss ("Def.'s

that the District violated Plaintiff's First Amendment right to free speech by requiring her to gain approval from the District and PTA before being able to speak or present on any topic at a PTA meeting. (*Id.* ¶¶ 73, 87–97.) Third, the Amended Complaint alleges that the District "summarily" deprived Plaintiff of a property interest in working at the high school and being involved in the PAL and SADD programs, as well as a protected interest "in her good name, reputation, honor, and integrity," without due process of law, in violation of the Fourteenth Amendment. (*Id.* ¶¶ 98–106.)[5]

The District seeks to dismiss all claims under Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim. (*See* Notice of Motion, Dkt. 29; Def.'s Mem., Dkt. 29-7, at 1.)

## DISCUSSION

### I. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the

---

Mem."), Dkt. 29-7, at 10–14; Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss ("Pl.'s Opp."), Dkt. 31, at 12–20.) Indeed, according to the Amended Complaint, Plaintiff alleges retaliation for "exercising her protected workplace rights by, *inter alia*, a) advocating for more support staff to handle the increasing number of students needing intervention; [and] b) declining (because of the aforesaid understaffing and overwhelming caseload) to engage in an optional presentation/workshop." (Am. Compl., Dkt. 21, ¶ 85.)

[5] Although the Amended Complaint includes a fourth claim for violation of 42 U.S.C. § 1983 (Am. Compl., Dkt. 21, ¶¶ 107–11), 42 U.S.C. § 1983 "is not itself a source of substantive rights" but rather "a method for vindicating federal rights elsewhere conferred," *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). The Court considers all of Plaintiff's claims as being brought pursuant to 42 U.S.C. § 1983.

reasonable inference that the defendant is liable for the misconduct alleged.'" *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). Making this determination is "a context-specific task" that requires the Court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Although the Court accepts as true all factual allegations contained in a plaintiff's complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *accord Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). In considering a motion to dismiss, the Court is limited "to the facts alleged in the complaint, the documents attached to the complaint or incorporated therein by reference, and documents that, while not explicitly incorporated into the complaint, are integral to the plaintiff's claims and were relied upon in drafting the complaint." *Lussoro v. Ocean Fin. Fed. Credit Union*, 456 F. Supp. 3d 474, 480–81 (E.D.N.Y. 2020) (internal quotation marks, alterations, and citations omitted); *accord Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002).

**II.     Analysis**

    **A.     Plaintiff Has Failed to Sufficiently Allege *Monell* Liability**

Because Plaintiff has withdrawn her claims against all individual defendants, leaving only the District as a defendant in this case (*see* Stipulation of Dismissal, Dkt. 28; 12/28/2020 Docket Order), the Court begins by evaluating the extent to which Plaintiff may hold the District liable under § 1983.

"Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." *Filarsky v. Delia*, 566 U.S. 377, 383 (2012) (quoting 42 U.S.C. § 1983). Under *Monell v. Department of Social Services*, 436 U.S. 658, 690–91 (1978), "a municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality."

7

*Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citations omitted). But it is well established that municipal liability cannot be based on a theory of *respondeat superior*, and thus, a local governmental entity "may not be sued under § 1983 for an injury inflicted solely by its employees or agent." *Monell*, 436 U.S. at 691, 694; *see also Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) ("The Supreme Court has made clear that 'a municipality cannot be made liable' under § 1983 for acts of its employees 'by application of the doctrine of *respondeat superior*.'" (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986))). Rather, establishing municipal liability under § 1983 "requires a showing that the plaintiff suffered a tort in violation of federal law committed by the municipal actors and, in addition, that their commission of the tort resulted from a custom or policy of the municipality." *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013). In other words, municipal liability requires three elements: "(1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020) (citation omitted).

A municipal policy or custom "may be pronounced or tacit and reflected in either action or inaction." *Lucente v. County of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020) (quoting *Cash v. County of Erie*, 654 F.3d 324, 334 (2d Cir. 2011)). In the particular context of a § 1983 action against a school district,

> [a] school district's liability under *Monell* may be premised on any of three theories: (1) that a district employee was acting pursuant to an expressly adopted official policy; (2) that a district employee was acting pursuant to a longstanding practice or custom; or (3) that a district employee was acting as a "final policymaker."

*Gerardi v. Huntington Union Free Sch. Dist.*, 124 F. Supp. 3d 206, 226 (E.D.N.Y. 2015) (quoting *Hurdle v. Bd. of Educ. of City of New York*, 113 F. App'x 423, 424–25 (2d Cir. 2004)). Plaintiff makes no allegation that the purported violations of her rights in this case resulted from an official

8

policy or a longstanding practice or custom; instead, she appears to rely on the third theory—that a district employee was acting as a "final policymaker." (*See* Pl.'s Opp., Dkt. 31, at 25–26.)

Whether a district employee was acting as a final policymaker "is a legal question, which is to be answered on the basis of state law." *Agosto*, 982 F.3d at 98 (quoting *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000)). Importantly, "the official in question need not be a municipal policymaker for all purposes" but rather "must be 'responsible under state law for making policy *in that area* of the [municipality's] business'" that concerns the challenged conduct. *Jeffes*, 208 F.3d at 57 (alterations in original) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988)). A final policymaker, however, "is someone 'whose edicts or acts may fairly be said to represent official policy' for the entire municipality." *Agosto*, 982 F.3d at 98 (quoting *Monell*, 436 U.S. at 694). "It is not enough that an official had discretion to make a decision that was unreviewable." *Id.* (citing *Anthony v. City of New York*, 339 F.3d 129, 139 (2d Cir. 2003)); *see also Jeffes*, 208 F.3d at 57 ("It does not suffice for these purposes that the official has been granted discretion in the performance of his duties." (citing *Praprotnik*, 485 U.S. at 127)). The plaintiff carries the burden of establishing as a matter of law that an official's conduct represents official policy. *Jeffes*, 208 F.3d at 57–58.

Here, Plaintiff summarily asserts that Superintendent Schneider "is certainly considered to be a 'final policymaking official[]'; ditto as to the Schneider underlings, Kenny et al." (Pl.'s Opp., Dkt. 31, at 26.) The Court is not obligated to accept this bare legal assertion. *See Twombly*, 550 U.S. at 555; *Rothstein*, 708 F.3d at 94. In fact, under New York law, "a Superintendent is subject to the direction and supervision of the Board of Education, and has no vote on Board decisions." *Jones v. Bay Shore Union Free Sch. Dist.*, 170 F. Supp. 3d 420, 438 (E.D.N.Y. 2016) (citing N.Y. Educ. Law § 1711(2)(a), (3)). Accordingly, courts "in the Eastern District of New York have

9

concluded that only Boards of Education have final policymaking authority for personnel decisions in New York public school districts." *O'Kane v. Plainedge Union Free Sch. Dist.*, No. 16-CV-5693 (FB) (ARL), 2019 WL 4575390, at *4 (E.D.N.Y. Sept. 20, 2019) (collecting cases); *see also Hurdle*, 113 F. App'x at 426–27 (concluding that a community superintendent of the New York City School District was not a final policymaker with regard to a retaliatory transfer). Additionally, it is the Board of Education that has "the power '[t]o establish . . . rules and regulations concerning the order and discipline of the schools.'" *Port Washington Teachers' Ass'n v. Bd. of Educ. of Port Washington Union Free Sch. Dist.*, 478 F.3d 494, 500 (2d Cir. 2007) (alterations in original) (citing N.Y. Educ. Law § 1709). A Superintendent, on the other hand, simply has "the power '[t]o *enforce* all provisions of law and all rules and regulations relating to the management of the schools and other educational, social and recreational activities under the direction of the board of education,' but not to *promulgate* or otherwise create rules, regulations, or policies of his own." *Id.* at 500–01 (alterations in original) (quoting N.Y. Educ. Law § 1711). In other words, "[w]hile a Superintendent may be a decision-maker, the Board of Education is the final policymaker." *Bay Shore Union Free Sch. Dist.*, 170 F. Supp. at 439 (citation omitted); *see also Cincotta v. Hempstead Union Free Sch. Dist.*, 313 F. Supp. 3d 386, 410 (E.D.N.Y. 2018) ("The Board is the final decision maker in the District.").

Plaintiff alleges no facts that would support a reasonable inference that the District's Board of Education ("Board") was involved in any of the alleged conduct at issue, including Plaintiff's reassignment to the elementary school, the concomitant loss of advisory roles in various student organizations, and the requirement that she obtain approval before presenting or participating in PTA meetings. Regarding Plaintiff's reassignment, the Amended Complaint simply alleges that Kenny, the Director of Guidance and Plaintiff's direct supervisor, "walked into Plaintiff's office,

shut the door, and informed" Plaintiff that she was being reassigned to the elementary school and that she should contact Assistant Superintendent Lavelle if she had questions. (Am. Compl., Dkt. 21, ¶ 53.) Similarly, with respect to her continued involvement in various student programs and clubs, the Amended Complaint simply makes vague allegations that "Defendants" denied Plaintiff the ability to continue her involvement with those organizations. (*See id.* ¶¶ 62–67.) These allegations, even accepted as true, do not give rise to a reasonable inference that the District's Board was involved in the alleged conduct. Plaintiff avers that Superintendent Schneider was the person who directed that she be required to obtain approval to speak or present at PTA meetings. (*Id.* ¶ 92; *see also* Pl.'s Opp., Dkt. 31, at 26.) But even so, there is no basis to conclude that Superintendent Schneider was a final policymaker for purposes of *Monell*—as opposed to merely a decisionmaker—with respect to that requirement. *See Bay Shore Union Free Sch. Dist.*, 170 F. Supp. at 439 ("While a Superintendent may be a decision-maker, the Board of Education is the final policymaker." (citation omitted)); *see also Agosto*, 982 F.3d at 98 ("It is not enough that an official had discretion to make a decision that was unreviewable." (citation omitted)). And though a Board of Education may delegate its policymaking authority, *see Port Washington Teachers' Ass'n*, 478 F.3d at 501 (citing N.Y. Educ. Law § 1709(33)), Plaintiff provides no factual allegations from which to infer that any delegation of policymaking authority occurred here.

In short, even accepting Plaintiff's factual allegations as true and construing them in the light most favorable to her, there is no basis to conclude that any decision of a final policymaker, or other act attributable to the District, plausibly caused the alleged violations of Plaintiff's federal rights. *Cf. Kimble v. Kingston City Sch. Dist.*, 792 F. App'x 80, 82 (2d Cir. 2019) (summary order) ("Because [plaintiff's] complaint fails to plead any facts supporting the inference that the adverse employment actions underlying [plaintiff's] First Amendment claims were made pursuant to the

policy or custom of the District or a decision by an employee with final policymaking authority, the district court correctly dismissed the complaint."). Therefore, because Plaintiff does not plausibly allege "a municipal policy or custom" with respect to any of her claims—the first required element for municipal liability, *see Agosto*, 982 F.3d at 97—all of her claims against the District must be dismissed.

### B. Plaintiff Has Failed to State a Due Process Claim

To state a procedural due process claim, a plaintiff must plausibly allege: (1) "possession by the plaintiff of a protected liberty or property interest"; and (2) "deprivation of that interest without constitutionally adequate process." *Tooly v. Schwaller*, 919 F.3d 165, 173 (2d Cir. 2019). A protected property interest is more than "an abstract need or desire" or "a unilateral expectation," but instead requires "a legitimate claim of entitlement." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). "In general, the nature and contours of a specific property interest are defined by some source independent of the Constitution—most often state law." *Ezekwo v. New York City Health & Hosp. Corp.*, 940 F.2d 775, 782 (2d Cir. 1991) (citing *Roth*, 408 U.S. at 577). And as a general rule, "an employee does not have a property interest in a particular work assignment." *Walker v. Tormey*, 178 F. Supp. 3d 53, 61 (N.D.N.Y. 2016) (collecting cases); *see also Bernheim v. Litt*, 79 F.3d 318, 322–23 (2d Cir. 1996) (observing that New York law "does not entitle a teacher to a specific class" (quoting *Adlerstein v. Bd. of Educ. of New York City*, 474 N.E.2d 209, 212–13 (N.Y. 1984))); *Arteta v. County of Orange*, 141 F. App'x 3, 7 (2d Cir. 2005) (summary order) (holding that sheriff's officers were not deprived of a protected property interest by lateral transfers that limited their ability to earn overtime because neither the officers' collective bargaining agreement nor New York law gave them "an interest in retaining an assignment to a particular division"). However, where it is established that "a public employee has a property interest in employment in a particular position, that employee cannot be terminated or demoted without due process" of law.

*Faghri v. University of Connecticut*, 621 F.3d 92, 99 (2d Cir. 2010) (citing *Ciambriello v. County of Nassau*, 292 F.3d 307, 317–18 (2d Cir. 2002)).

Plaintiff here points to no law or other source that entitles her to an assignment at the District's high school, or to her advisory positions with the PAL program and SADD club. (*See* Am. Compl., Dkt. 21, ¶¶ 99–100.) Accordingly, she has not plausibly alleged a constitutionally protected interest in those benefits. *See Facci-Brahler v. Montgomery County*, No. 18-CV-941 (LEK) (ATB), 2020 WL 360873, at *8 (N.D.N.Y. Jan. 22, 2020) ("Since Plaintiff fails to point to a contract or statute that would have conferred a protected property interest in her position, she has not sufficiently alleged a constitutionally protected property interest." (internal quotation marks and citation omitted)). In addition, Plaintiff alleges that she had a protected interest "in her good name, reputation, honor, and integrity" (Am. Compl., Dkt. 21, ¶ 101), but she fails to allege facts that at least circumstantially show damage to her reputation and integrity. Plaintiff alleges that it took several weeks for Kenny to publish a website that she created, refused to link the website with other department websites, and did not list Plaintiff's name on the guidance website as a social worker. (*Id.* ¶¶ 69, 72.) Plaintiff also alleges she was not invited to various committee meetings. (*Id.* ¶ 71.) None of these facts gives rise to a plausible inference that she has been defamed. Moreover, "[d]amage to reputation alone, even by a government entity, does not implicate a liberty interest protected by the Due Process Clause." *Silano v. Sag Harbor Union Free Sch. Dist. Bd. of Educ.*, 42 F.3d 719, 724 (2d Cir. 1994) (citing *Paul v. Davis*, 424 U.S. 693, 701 (1976)). There must be "modification or termination of some legal right or status before damage to reputation rises to the level of a constitutional deprivation." *Id.* (collecting cases); *see also Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 630 (2d Cir. 1996) ("A free-standing defamatory statement made by a state official about an employee is not a constitutional

13

deprivation. . . . But a defamatory statement about an employee implicates a liberty interest when it is made during the course of that employee's termination from employment." (collecting cases)). Plaintiff has not stated a plausible due-process claim.

### C. Leave to Amend

"[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Green v. Mattingly*, 585 F.3d 97, 104 (2d Cir. 2009) (citation omitted). A district court need not grant leave to amend when amending would be futile or cause undue prejudice or delay. *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). But generally, a court should "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). This includes granting leave to amend *sua sponte*. *See Cotiviti, Inc. v. Deagle*, 501 F. Supp. 3d 243, 264 (S.D.N.Y. 2020) (granting leave to amend *sua sponte*, despite dismissing most of the plaintiff's claims, because it was possible that the plaintiff "could provide some of the missing facts necessary to support its claims through further investigation").

#### 1. Municipal Liability

The Court finds that allowing Plaintiff to attempt to replead municipal liability as to the District is warranted in this case, particularly considering the change in the case when Plaintiff decided to withdraw her claims against all of the individual defendants on December 28, 2020, just as briefing of the instant motion was about to be completed. (*See* Stipulation of Dismissal, Dkt. 28; 12/28/2020 Docket Order.) The Court also finds it possible that Plaintiff might be able to provide additional facts that would support a plausible inference that the District's Board, or some other person vested with final policymaking authority, caused the First Amendment and Due

Process violations of which Plaintiff complains.[6]  Further, for the reasons that follow, amendment of Plaintiff's claims would not be futile.

### 2. Plaintiff's First Amendment Claims

To start, amendment of Plaintiff's First Amendment claims is not futile, and if Plaintiff is able to sufficiently plead municipal liability, these claims could proceed.  Regarding Plaintiff's retaliation claim, Defendant's argument that Plaintiff did not engage in protected speech is unavailing at this juncture.  (*See* Def.'s Mem., Dkt. 29-7, at 10–14.)  A public employee "may be protected from retaliation even when speaking in the workplace when he or she is speaking 'as a citizen . . . upon matters of public concern.'" *Montero v. City of Yonkers*, 890 F.3d 386, 395 (2d Cir. 2018) (alteration in original) (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)).  But "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).  The question of whether an employee is speaking pursuant to their official duties "is not susceptible to a brightline rule." *Ross v. Breslin*, 693 F.3d 300, 306 (2d Cir. 2012).  Instead, courts examine various factors, including "the nature of the [employee]'s job responsibilities, the nature of the speech, and the relationship between the two," as well as "[o]ther contextual factors." *Id.* (citing *Weintraub v. Bd. of Educ.*, 593 F.3d 196, 201–02, 205 (2d Cir. 2010)).  At bottom, the inquiry "is a practical one" that focuses more on "the duties an employee actually is expected to perform" as opposed to job descriptions that "often bear little resemblance" to those duties.  *Garcetti*, 547 U.S.

---

[6] Based on the December 28, 2020 stipulation, in which Plaintiff agreed to the dismissal of all claims against the individual defendants with prejudice, those claims cannot be reasserted against them in this matter.

at 424–25; *see also Matthews v. City of New York*, 779 F.3d 167, 173 (2d Cir. 2015) (describing the inquiry under *Garcetti* as "a functional approach toward evaluating an employee's job duties").

In light of the fact-intensive, context-specific nature of the inquiry, the record is not sufficiently developed at this stage to determine as a matter of law whether Plaintiff was speaking pursuant to her official duties when she, "*inter alia*, a) advocat[ed] for more support staff to handle the increasing number of students needing intervention; [and] b) declin[ed] . . . to engage in an *optional* presentation" (Am. Compl., Dkt. 21, ¶ 85 (emphasis added)). *See Matthews v. City of New York*, 488 F. App'x 532, 533 (2d Cir. 2012) (summary order) ("[S]ome discovery . . . is necessary before it can be decided whether [the plaintiff] can or cannot pursue a First Amendment retaliation claim in this case."); *see also Ross v. Lichtenfeld*, No. 06-CV-6698 (SCR), 2007 WL 9826117, at *4 (S.D.N.Y. Sept. 17, 2007) ("[I]t is hardly this Court's place to determine plaintiff's official duties at [the motion to dismiss] stage, simply pursuant to her job title and a general description by the defendants of what her duties were."). Moreover, that Plaintiff's speech "resulted only from the special knowledge gained through her employment," as Defendant claims (Def.'s Mem., Dkt. 29-7, at 12), is not by itself dispositive. *See Lane v. Franks*, 573 U.S. 228, 240 (2014) ("[T]he mere fact that a citizen's speech concerns information acquired by virtue of his [or her] public employment does not transform that speech into employee—rather than citizen—speech."); *Garcetti*, 547 U.S. at 421 (noting that whether speech "concerned the subject matter of [the plaintiff's] employment . . . is nondispositive"). In short, accepting Plaintiff's factual allegations as true and viewing them in the light most favorable to her, the Court concludes that further development of the record with respect to Plaintiff's claim of retaliation would be warranted if she can sufficiently allege retaliation attributable to the District. *See Twombly*, 550 U.S. at 556 (explaining that the plausibility standard "does not impose a probability requirement"

but rather "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" unlawfulness). Therefore, amendment with respect to Plaintiff's claim of retaliation would not be futile.

Likewise, amendment with respect to Plaintiff's free-speech claim would not be futile. It is axiomatic that "the government need not permit all forms of speech on property that it owns and controls." *Perry v. McDonald*, 280 F.3d 159, 166 (2d Cir. 2001) (quoting *Int'l Soc'y for Krishna Consciousness v. Lee*, 505 U.S. 672, 678 (1992)). "The appropriate level of judicial scrutiny depends on the nature of the forum subject to the regulation." *Make The Road by Walking, Inc. v. Turner*, 378 F.3d 133, 142 (2d Cir. 2004). But even where government property is "not traditionally open to public expression or intentionally designated by the government as a place for such expression"—*i.e.*, in a "nonpublic forum"—a regulation on speech must still be "reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Id.* at 143 (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983)); *see also Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 806 (1985) ("[T]he government violates the First Amendment when it denies access to a speaker solely to suppress the point of view he [or she] espouses on an otherwise includible subject."). At this juncture, the Court does not have a sufficient basis to decide whether the alleged restraint on Plaintiff's speech is reasonable and viewpoint neutral.[7] Plaintiff alleges that she wanted to raise awareness of "the mental and emotional issues facing many of the students within the District" at PTA meetings, but "by District fiat she was banned from participating and presenting on any topic at any PTA meeting without prior approval from the District and the PTA about her topic." (Am.

---

[7] The Court does not decide here whether a PTA meeting is a nonpublic, or other type of, forum.

Compl., Dkt. 21, ¶¶ 73–74.) According to Plaintiff, she was the only District employee ever to be subjected to a pre-approval requirement. (*Id.* ¶ 75.) These allegations, accepted as true and construed in the light most favorable to Plaintiff, suggest that District officials may have had broad, if not unfettered, discretion to decide whether Plaintiff could participate in or present on any topic at any PTA meeting. Such discretion may be neither reasonable nor viewpoint neutral. *Cf. Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1888 (2018) ("Although there is no requirement of narrow tailoring in a nonpublic forum, the State must be able to articulate some sensible basis for distinguishing what may come in from what must stay out." (citing *Cornelius*, 473 U.S. at 808–09)). In short, further factual development of Plaintiff's free-speech claim—assuming she can plausibly allege a municipal policy, custom, or act of a final policymaker—is warranted. Amendment of this claim is accordingly not futile.

### 3. Plaintiff's Due Process Claim

Although, as discussed above, Plaintiff at present has not sufficiently alleged a due-process violation, the Court finds that amendment of this claim is not futile, and therefore will allow Plaintiff also to amend with respect to this claim. Accepting as true, as the Court must, that Plaintiff's reassignment to the elementary school constituted a demotion that resulted in loss of income (*see* Am. Compl., Dkt. 21, ¶¶ 54, 78), the Court finds that Plaintiff might be able to allege additional facts that plausibly show the deprivation of a constitutionally protected property interest requiring due process. *Cf. Faghri*, 621 F.3d at 99 ("Where a government employer demotes an employee, rather than terminating [the employee], 'the determination of whether [the employee] is entitled to a pre-deprivation hearing is fact-specific.'" (brackets omitted) (quoting *Ciambriello*, 292 F.3d at 319)). Therefore, out of an abundance of caution and in the interest of justice, as well as considering the relatively early stage of the proceedings, the Court grants Plaintiff leave to amend her due-process claim, along with her First Amendment retaliation and free-speech claims.

## CONCLUSION

Defendant's motion to dismiss is granted, but the Court *sua sponte* grants Plaintiff leave to amend her claims. Plaintiff may file a second amended complaint within thirty (30) days of the date of this Memorandum & Order, after which Defendant shall have fourteen (14) days to answer or otherwise respond. If Plaintiff fails to file a second amended complaint within thirty (30) days, this case will be dismissed with prejudice and the Court will enter judgment accordingly.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 30, 2021
      Brooklyn, New York